UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HEATHER WAGNER,

                                        Plaintiff,

                    vs                                          1:03-CV-1522

TODD BURNHAM; and CITY OF ALBANY,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

OLIVER & OLIVER                                 LEWIS B. OLIVER, JR., ESQ.
Attorneys for Plaintiff
156 Madison Avenue
Albany, New York 12202

BRENNAN, REHFUSS & LIGUORI                      JOHN W. LIGUORI, ESQ.
Attorneys for Defendants                        STEPHEN J. REHFUSS, ESQ.
40 British American Boulevard
Latham, New York 12110

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Heather Wagner ("Wagner" or "plaintiff") asserts sexual harassment and

unlawful discrimination claims pursuant to 42 U.S.C. §§ 1983 and 1988, as well as pendent

state law claims pursuant to the New York State Human Rights Law ("NYSHRL"), New York

Executive Law § 296, the New York State Constitution, article 1, section 11 and New York

Civil Rights Law § 40-c, arising out of the events leading up to, and including, the termination

of her employment with the City of Albany (the "City").  Pursuant to Fed. R. Civ. P. 56, and an

additional claim of qualified immunity, defendants Todd Burnham ("Burnham") and the City

(collectively referred to in this opinion as "the defendants") have moved for summary

judgment on all claims against them.  Plaintiff opposes.

Oral argument was heard on July 22, 2005, in Albany, New York.  Decision was

reserved.

## II. **FACTS**

Plaintiff submitted an employment application for a job opening with the City's

Community Aid department in January 2002.  (Docket No. 22, Defs.' Statement of Material

Facts ¶ 4) ("DSMF ¶ __".)  She was directed to contact Burnham, Assistant Corporation

Counsel for the City, regarding the status of her application, and she did so numerous times

between January and March 2002, although plaintiff and defendants dispute the number of

telephone calls.  (Docket No. 27, Pl.'s Rule 7.1 Statement of Material Facts ¶¶ 4-5 ("PSMF ¶

__"); DSMF ¶ 5.)  The parties dispute the nature of these calls, as Wagner contends (and

defendants deny) that in addition to informing her about her application status, Burnham

asked questions about her personal life, which made her uncomfortable.  (PSMF ¶ 8; DSMF

¶¶ 7-9.)  She did not tell Burnham that his questions made her uncomfortable, as she did not

wish to develop a "bad relationship" with an employee of her potential employer.  (PSMF

¶ 8.)

In March 2002, plaintiff was interviewed for the position of Community Aid with the

City; both defendant Burnham and the director of the Building and Codes Department for the

City, Valerie Scott ("Scott"), were present.  (DSMF ¶¶ 11-12.)  She believed that she was

interviewing for a position as Burnham's personal secretary, and that if she were hired, both

Scott and Burnham would be her supervisors.  (PSMF ¶¶ 11, 14.)  Defendants deny that they

ever indicated to plaintiff that Burnham would be her supervisor.  (DSMF ¶ 14.)  Wagner

contends that during her interview, conducted primarily by Scott, Burnham made her uncomfortable by repeatedly "looking her up and down." (PSMF ¶ 15.) She also alleges, though defendants deny, that when Burnham walked her to the door at the conclusion of the interview, he made several sexually inappropriate comments regarding her appearance. (PSMF ¶¶ 16-17; DSMF ¶¶ 16-17.)

From the date of her March 2002 interview to June 17, 2002, the date she was notified that she was hired, plaintiff contacted Burnham at least ten more times concerning the position with the City. (DSMF ¶ 25.) During that same time period, Burnham visited her twice at the tanning salon where she was volunteering. (DSMF ¶ 28; PSMF ¶ 28.) Wagner alleges, and defendants deny, that during his first visit to the salon, Burnham flirted with her and made sexually inappropriate comments regarding her appearance. (Docket No. 27, Pl.'s Statement of Genuine Issues of Material Fact Precluding Summ J. for Defs. ¶¶ 97-100 ("PSGIMF ¶ __"); Docket No. 28, Defs.' Reply Statement of Material Facts ¶¶ 97-100 ("DRSMF ¶ __".)) On his second visit on June 17, 2002, Burnham wished her a happy birthday and informed her that the position with the City was hers. (DSMF ¶ 29.)

Wagner began her employment with the City on June 21, 2002, as a probationary employee. Id. ¶ 30. Her desk was located in close proximity to Burnham's (DSMF ¶ 13), as her job was to act as an assistant to him and, when necessary, to Scott (PSGIMF ¶¶ 57, 115). Burnham was away from the office during the first week of plaintiff's employment, but she alleges that upon his return, he resumed his sexual remarks, which continued to make her uncomfortable. (DSMF ¶¶ 34-35.) She claims that he addressed her as "sweetheart," "honey," or "hun," (PSGIMF ¶¶ 126, 131), and at times, spoke about various parts of his body in front of her (DSMF ¶ 36). Defendants deny that Burnham ever spoke about his

anatomy with Wagner.  (DRSMF ¶ 131.)  Plaintiff also claims, though defendants deny, that on one occasion, Burnham suggested that she should unbutton some of the buttons on her sweater.  (PSGIMF ¶ 130; DRSMF ¶ 130.)  Additionally, she states, and defendants deny, that Burnham questioned her about her boyfriend on several occasions, and suggested that she "get rid" of him.  (Docket No. 1, Complaint ¶¶ 28-29 ("Compl. ¶ __"); DRSMF ¶ 136.)  She also maintains, and defendants dispute, that Burnham suggested that the two of them (Wagner and Burnham) should get together outside of work, and if they did, there "would be no strings attached."  (PSGIMF ¶¶ 139-142; Compl. ¶¶ 31-34; DRSMF ¶ 136.)

Approximately three weeks into her employment with the City, Wagner was relocated to the public area of the building and relieved of her duties of assisting Burnham.  (Compl. ¶ 35; DSMF ¶ 47.)  Defendants claim that because of issues with plaintiff's work product, Scott made the decision to transfer her to the public area to utilize her people skills and her "sunny" disposition.  (DSMF ¶ 47; PSGIMF ¶ 169.)  Plaintiff, however, contends that the transfer was the result of her refusal to get together with Burnham outside of work; she alleges that she was transferred only one day after she refused to let him "get to know her better," and she argues that in retaliation, Burnham complained to Scott about her, which resulted in her transfer.  (PSGIMF ¶¶ 164, 173.)  This transfer did not result in a change of title or salary.  (DSMF ¶ 48.)

On or about the third week of July 2002, Wagner states that while she was delivering a telephone message to defendant Burnham, he asked her if she had any single friends.  (DSMF ¶ 52; PSMF ¶ 52.)  She gave him the telephone number of her best friend, Lisa Hockler ("Hockler"), a bartender at a local establishment.  (Compl. ¶ 36; DSMF ¶ 53.)  The Friday of that week, Burnham, Scott, and Dan Sherman ("Sherman"), another City

employee, went to Hockler's place of employment for happy hour, where Burnham introduced himself to Hockler.  (DSMF ¶ 55.)  He later made an extremely offensive sexual suggestion to Hockler, which was overheard by Sherman.  (PSGIMF ¶¶ 193-94.)[1]  Shortly thereafter, Burnham left the bar.  (PSGIMF ¶ 208.)

Approximately fifteen minutes after Burnham left, Hockler spoke with Wagner, who was not at the establishment to witness the above exchange, to question why she would send Burnham to see her and to tell her what Burnham had said.  Id. ¶ 205.  After speaking with Hockler, Wagner called Scott on Scott's cellular telephone to complain about Burnham's conduct.  (See DSMF ¶ 62.)  She contends, though defendants dispute, that she complained about Burnham's comments to Hockler and referred to his actions as sexual harassment.  (PSGIMF ¶ 211; DRSMF ¶ 211.)  Specifically, Wagner states that she told Scott, ". . . if this isn't sexual harassment, then what is.  And this isn't the first time."  (Docket No. 22, Ex. E, Wagner Dep. at 197.)  Throughout the conversation, Wagner was upset and crying.  (PSGIMF ¶¶ 213-14.)

Scott called Burnham on his cellular telephone to tell him that plaintiff had called her and had been "laughing" about his comment to Hockler.  Id. ¶ 222.  On the following Monday, Scott again spoke with him regarding the incident, but did not consider the conversation to be disciplinary in nature.  Id. ¶ 223.  Plaintiff herself did not approach Burnham about the incident.  Id. ¶ 224.  Later that week, however, she claims, though defendants deny,  that Burnham once again proposed that they develop a relationship outside of work and

---

[1]  The parties dispute whether the proposition included Wagner; defendants and Hockler stated that Burnham propositioned Hockler only, while plaintiff, who was not at the establishment, claims that Burnham propositioned that both Hockler and Wagner meet him to engage in sexual activities.  (See generally Compl. ¶ 38; DSMF ¶ 61; PSGIMF ¶¶ 193, 206; DRSMF ¶ 206.)

questioned why she was being "difficult;" she responded by saying that she was "tired of this shit."  Id. ¶ 226; see also Compl. ¶ 48; DRSMF ¶ 226.  On August 2, 2002, approximately one week after the incident between Burnham and Hockler, and a few days after Wagner's alleged rebuff of his advances, Burnham fired Wagner by handing her a letter, signed and drafted by him.  (Compl. ¶¶ 49-50; PSGIMF ¶ 257.)

The facts of the termination of plaintiff's employment are disputed.  Plaintiff contends that she was fired because she refused to submit to Burnham's sexual advances.  (See generally Compl. ¶¶ 57-61; 63; 72.)  Defendants, however, contend that they had legitimate reasons for firing Wagner.  In addition to her poor work product noted above, defendants claim that she was emotionally unstable and would make personal phone calls during working hours that would often result in plaintiff crying or fighting with the person on the other end of the line.  (DSMF ¶¶ 66-67.)  They claim that other employees complained to Scott about these personal telephone calls.  Id. ¶ 68.  Defendants also state that Wagner, a non-lawyer, gave incorrect legal advice to a landlord, and that she was inappropriate when dealing with customers and/or other City employees.  Id. ¶¶ 69-70.  However, there are no written evaluations of her work to substantiate these claims.  (PSGIMF ¶ 157.)  Defendants maintain that these issues prompted her termination, and that Scott and Public Safety Commissioner John Nielsen, not defendant Burnham, made the decision to fire her.  (DSMF ¶ 72.)  According to defendants, all letters of termination are delivered by members of the Corporation Counsel, and due to his position in that office, Scott asked Burnham to draft and deliver Wagner's letter of termination.  Id. ¶¶ 74-77.

All tolled, plaintiff was employed by defendants for six weeks.  During that time, she was given a copy of the City's Personnel Policy & Procedures Manual, which contains the

City's sexual harassment policy.  (DSMF ¶¶ 39-41.)  Wagner admits that she was familiar

with the policy and claims that her telephone call was a complaint of sexual harassment.

(DSMF ¶ 42; PSGIMF ¶¶ 42-43.)  Defendants dispute and claim that she never informed

anyone at the City about the alleged harassment, which precluded defendants from

investigating the matter and taking further action, if necessary.  (DSMF ¶ 43.)

## III.  DISCUSSION

### A. Summary Judgment Standard

When considering a motion for summary judgment, evidence is viewed in the light

most favorable to the non-moving party, and all real inferences are drawn in her favor.

Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002).  It is well settled that summary

judgment must be granted only when the pleadings, depositions, answers to interrogatories,

admissions, and affidavits show that there is no genuine issue as to any material fact, and

that the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P.

56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Richardson v. New York

State Dep't of Corr. Servs., 180 F.3d 426, 436 (2d Cir. 1999).  An issue is "genuine" if the

relevant evidence is such that a reasonable jury could return a verdict for the non-moving

party.  Liberty Lobby, 477 U.S. at 248-49.

A party seeking summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact, as to a dispositive issue.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the party

opposing the motion for summary judgment must produce specific evidence establishing the

existence of a genuine factual dispute that a reasonable jury could find in its favor.  Fed. R.

Civ. P. 56; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 587. It cannot rest upon "mere allegations or denials" asserted in its pleadings. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1999).

To withstand a summary judgment motion, sufficient evidence must exist upon which reasonable factfinders could resolve the issue in favor of the nonmovant. Liberty Lobby, 477 U.S. at 248-49; Matsushita, 475 U.S. at 587. Thus, summary judgment is proper where there is "little or no evidence . . . in support of the non-moving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

## B. Sexual Discrimination Claims

Wagner contends that she was deprived of her right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution and the New York State Constitution, specifically, her right to be protected from sex discrimination in the terms and conditions of public employment. She alleges that both Burnham's actions, and the City's failure to take action in response to her complaint of sexual harassment, violated her right to be free from sexual harassment - both quid pro quo and hostile work environment - and retaliation in the terms and conditions of her employment.

Sexual harassment in the workplace is actionable under § 1983 as a violation of the Fourteenth Amendment right to Equal Protection. Annis v. County of Westchester, 36 F.3d 251, 254 (2d Cir. 1994). "Individuals have a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 117 (2d Cir. 2004) (citing Davis

v. Passman, 442 U.S. 228, 234-35 (1979); Rodriguez v. Bd. of Educ., 620 F.2d 362, 366 (2d Cir. 1980)).

To survive a summary judgment motion on her § 1983 sexual harassment claims, Wagner must set forth evidence that (1) Burnham "was acting 'under color of state law' at the time he committed the conduct complained of, and (2) his conduct deprived her of "'rights, privileges or immunities secured by the Constitution or laws of the United States."'" Hayut v. State Univ. of New York, 352 F.3d 733, 743-44 (2d Cir. 2003) (quoting Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency, 77 F.3d 26, 29-30 (2d Cir. 1996) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981))).

### 1.  Claims Against Defendant Burnham

Defendant Burnham seeks summary judgment dismissing plaintiff's § 1983 sexual harassment claims against him; in addition to denying that he engaged in any behavior towards the plaintiff that could be classified as sexual harassment, he asserts that he was not her supervisor and had no authority to adversely affect her employment with the City.

Generally, under § 1983 analysis, "state employment is . . . sufficient to render the defendant a state actor."  West v. Atkins, 487 U.S. 42, 49 (1988); see also Patterson v. County of Oneida, New York, 375 F.3d 206, 230 (2d Cir. 2004).  In a § 1983 suit, "a defendant necessarily 'acts under color of state law when he abuses the position given to him by the State.'" Hayut, 352 F.3d at 744 (quoting West, 487 U.S. at 50).  Thus, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  West, 487 U.S. at 50.  However, "[m]ere employment by a state or municipality does not automatically mean that a defendant's

actions are taken under the color of state law." Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996) (citing Polk County v. Dodson, 454 U.S. 312, 319-320 (1981)).

Here, when looking at the evidence most favorable to the plaintiff, it is apparent that Burnham was acting "under color of state law" when the alleged sexual harassment occurred.  While defendants dispute whether Burnham was Wagner's supervisor, he did have the power and authority, because of his position as Assistant Corporation Counsel, to assign her everyday job tasks.  It was Burnham that plaintiff was told to, and did, contact regarding the possible employment.  It was Burnham who kept her up-to-date on the status of the position.  It was Burnham who first informed her that she had been hired.  And it was Burnham who ultimately informed her that she was fired.

Plaintiff testified that the alleged harassment occurred both before and during her employment with the City, both inside and outside of the workplace.  She stated that she did not say anything to stop the harassing behavior before she was employed with the City, because "she did not want to have a bad relationship with a person for whom she hoped to work," and she did not report the continuing harassment after she was employed "because she did not know if she would be believed and because she did not know if such a complaint would adversely effect [sic] her job."  (PSGIMF ¶¶ 67, 143.)  Without the authority provided to him by the City, Burnham would not have been in the position to harass her during and after the working hours.  Thus, for purposes of summary judgment, Burnham was acting "under color of state law."

Wagner must also proffer evidence that his conduct deprived her of her rights under the Constitution and the laws of the United States to survive Burnham's motion for summary judgment on her § 1983 claims.  She alleges that Burnham's conduct deprived her of her

right to equal protection of the laws under the Fourteenth Amendment, specifically, her right to be free from (1) quid pro quo sexual harassment, (2) a hostile work environment in public employment, and (3) retaliation in the terms and condition of her public employment, based on her objections to the above sexual harassment.  Each of these will be addressed in turn.

Claims of sexual harassment brought under § 1983 are analyzed under Title VII jurisprudence and the familiar McDonnell-Douglas burden-shifting framework. Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996); Hayut, 352 F.3d at 744; Annis, 136 F.3d at 245. NYSHRL discrimination claims "are [also] evaluated using the same analytical framework used in Title VII actions."  Burniche v. General Elec. Automation Servs., Inc., 306 F. Supp. 2d 233, 238-39 (N.D.N.Y. 2004) (quoting Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001)).  Thus, for purposes of this opinion, Wagner's claims of sexual discrimination in violation of both federal law and the NYSHRL will be considered together.

Title VII of the Civil Rights Act of 1964 provides that: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a).  This prohibition against sexual discrimination extends to sexual harassment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-68 (1986).  Courts have traditionally recognized two types of sexual harassment: "quid pro quo" harassment, which "involv[es] a threat which is carried out," and "hostile work environment" harassment, where there is "offensive conduct" that is "severe or pervasive."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752-53 (1998).

As previously stated, discrimination claims under Title VII are analyzed under the McDonnell Douglas "burden-shifting" framework. See Coffey v. Dobbs Int'l Servs., Inc., 170 F.3d 323, 326 (2d Cir. 1999). The plaintiff is first required to demonstrate a prima facie case of gender discrimination. Burniche, 306 F. Supp. 2d at 239 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the plaintiff satisfies this burden, "a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. Id. (quoting McDonnell Douglas, 411 U.S. at 802). Should the defendant fulfill this obligation, the presumption of discrimination disappears, and the burden again shifts to the plaintiff to prove that the explanations offered by the defendant are merely pretexts for discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 804). To meet this final burden, the plaintiff must show that "not only was the reason offered false, but that the real reason was discrimination." Belfi v. Prendergast, 191 F.3d 129, 140 (2d Cir. 1999) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

### a. Quid-Pro-Quo Sexual Harassment

Quid pro quo sexual harassment occurs "when an employer alters an employee's job condition or withholds an economic benefit because the employee refuses to submit to sexual demands." Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989) (citing Meritor Sav. Bank, 477 U.S. at 64-65). To set forth a prima facie case of quid pro quo sexual harassment, "'a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment.'" Gallagher v. Delaney, 139 F.3d 338, 346 (2d Cir. 1998) (quoting Karibian v. Columbia Univ.,

14 F.3d 773, 777 (2d Cir. 1994)).  While the term "quid pro quo" does not appear in the text of Title VII, when an employee can demonstrate that "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII."  Burlington Indus., 524 U.S. at 753-54.  The Supreme Court further defined a "tangible employment action" as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Id. at 761.

        Plaintiff contends that she was subjected to quid pro quo sexual harassment on two separate occasions, both on days closely following an incident where she rejected Burnham's unwelcome sexual advances: (1) when she was transferred from her position assisting defendant Burnham to the public area of the Public Safety Building; and (2) when her position with the City was terminated.  Defendants maintain that because Burnham was not plaintiff's supervisor, and the decision to fire plaintiff was made by Scott, not Burnham, her quid pro quo sexual harassment claim must fail.  However, as discussed in detail in section III(B)(1)(b)(ii) infra, whether it was Burnham and/or Scott that was plaintiff's true supervisor or supervisors is a question of fact for the jury.  When viewing the facts in the light most favorable to plaintiff, who regarded Burnham as her supervisor, she has alleged a prima facie case of quid pro quo sexual harassment; thus, defendants' motion for summary judgment as to this claim will be denied.

        The Supreme Court has recognized that "whether particular conduct was . . . unwelcome presents difficult problems of proof."  Meritor Sav. Bank, 477 U.S. at 68.  When presented with evidence from both parties, "[a] jury could find, based on its cumulative

perceptions and backgrounds, that requests for sexual activity are not always made explicitly," and failure to directly demand sexual favors as a condition for continued employment does not negate indirect pressure.  <u>Gallagher</u>, 139 F.3d at 346.

Wagner's evidence could lead a reasonable juror to find that Burnham's conduct was sexually inappropriate or unwelcome.  On the first occasion at issue, he approached her, saying that he "wanted to get to know her better, that she should stop making things so difficult, that there would be no strings attached, that her boyfriend was a real rude asshole, and that 'there would be no obligations' between her and defendant Burnham."  (PSGIMF ¶ 164.)  She excused herself from the situation, and she left the office.  The next, day, plaintiff was removed from her position as his assistant and transferred into the common area of the public safety building to work with the public.

The Supreme Court has held that "reassignment with significantly different responsibilities" is a tangible employment action under Title VII jurisprudence.  <u>Burlington Indus.</u>, 524 U.S. at 761.  Before her reassignment, plaintiff was situated in her own office, which adjoined Burnham's office.  In addition to various secretarial tasks for Scott and assisting at the front counter when help was needed, she was drafting letters for him, making appointments for him, handling his schedule and answering his phone.  After the reassignment, while there was no change in job title or salary, she was relegated to a small cubicle in the common area of the building.  She no longer handled any work for Burnham; she instead dealt with more general public matters. Wagner considered this transfer to be a demotion - and given the change in location and duties, a reasonable factfinder also may see it as such.

- 14 -

On the second occasion, Burnham again indicated that he wanted to establish a sexual relationship with her where "there would be no obligations or strings attached." (PSGIMF ¶ 226.)  Wagner responded that she was "tired of this shit," and walked out of his office.  At the end of that week, she was fired via a letter written, signed, and delivered by Burnham.  Id. ¶¶ 49-50.  There is no need to discuss whether this action constituted a tangible employment action under Title VII, as termination of employment is a prima facie adverse employment action.  See Burlington Indus., 524 U.S. at 761.

Based on the above evidence, taken in the context of the continued pattern of alleged sexual comments, plaintiff has established a prima facie case of quid pro quo sexual harassment, as reasonable people could believe that Burnham's conduct was sexually inappropriate and unwelcome, and as a result of her refusal to submit to these sexual advances, she suffered tangible employment actions.

To rebut this presumption of discrimination, defendants have proffered that the above actions were based on valid, nondiscriminatory reasons.  Defendants allege that plaintiff was transferred into the common area of the public safety building because there were issues with her work product, and they wished to "capitalize on her positive assets, which would be working with the public in a friendly manner . . . [since] she had a sunny, friendly disposition and was customer friendly." (PSGIMF ¶ 169.)  Additionally, defendants maintain that in addition to the issues with her work product, especially her written correspondence, plaintiff frequently made personal telephone calls, many of which caused her to become loud and upset.  They contend that she - a nonlawyer - gave incorrect legal advice to a landlord, resulting in the landlord facing criminal charges.  They also state that

they had concerns about her inappropriate attitude towards customers and City employees, all of which led to plaintiff's termination from City employment.

While these statements are legitimate, non-discriminatory grounds for the actions taken against Wagner and would be sufficient to rebut her prima facie case of quid pro quo sexual harassment, she may combat these justifications by showing that they are simply a pretext for discrimination.  Here, plaintiff has set forth evidence which creates a genuine issue of material fact as to whether defendants' asserted reasons for her transfer and subsequent termination are a pretext for discrimination.

Plaintiff points out that defendants claim they transferred her from her position assisting Burnham to working with the public because of her "sunny" disposition and her ability to be "customer friendly."  (PSGIMF ¶ 169.)  However, she had received verbal counseling from Scott prior to the transfer because "there were times that she was inappropriate with both [Burnham] and customers." Id. ¶ 145.  Additionally, approximately two to three weeks after the transfer, she was fired from her position with the City; defendants allege her employment was terminated partly because of her inappropriate attitude towards customers and City employees.  Wagner aptly questions how the same conduct could lead to a verbal counseling one day, a positive transfer the next, and ultimately, to job termination a few weeks later.  Given that plaintiff has provided evidence of defendants' completely opposite perceptions of plaintiff's ability to interact with the public and her fellow employees - one of defendants' main reasons for her transfer and dismissal - this issue will be best decided by a jury.

Defendants also state that plaintiff's frequent personal telephone calls, and her behavior while speaking on the telephone, led to her dismissal.  However, the frequency of

these calls, and the alleged complaints by plaintiff's co-workers, is in dispute.  Wagner

contends that she did not make the amount of personal calls that the defendants claim, nor

did any of her co-workers complain to her about the nature or frequency of these calls.  As

pervasive as defendants allege the calls, and plaintiff's emotional behavior, to be, Scott can

only point to two of plaintiff's co-workers that ever spoke to her in connection with plaintiff's

behavior.  Whether her dismissal was truly justified by her behavior on the telephone is a

question that will be best answered by a jury.

Wagner also denies giving legal advice to any member of the general public.  As

she is opposing this motion for summary judgment, the facts must be viewed in the light most

favorable to her - her denial of this allegation negates this particular justification.  Further-

more, she points out that there is not a single employment evaluation indicating that there

was a problem with her work.   When an employee had committed an infraction that was

grounds for dismissal, Scott stated that she would counsel that person in writing.  But - if

plaintiff's work product was so poor that it was grounds for dismissal, why did she never

receive a written evaluation?  This evidence, or lack thereof, creates an issue of material fact

for the jury.

Read in the light most favorable to plaintiff, as the non-moving party, the evidence

supports an inference that the defendants' proffered justifications for relocating and

subsequently dismissing plaintiff from her position with the City are pretexts for gender

discrimination, specifically quid pro quo sexual harassment.  The defendants have not proven

any affirmative defense such that no rational jury could find for plaintiff on her quid pro quo

sexual harassment claim.  Accordingly, defendants' motion for summary judgment as to

plaintiff's quid pro quo sexual harassment claims must be denied.

### b. **Hostile Work Environment**

Plaintiff also claims that defendants created, maintained and allowed a hostile work environment in public employment in violation of her rights under Title VII.

A hostile work environment claim requires a showing that the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "To survive a motion for summary judgment [on a claim of sex-based hostile work environment], a plaintiff . . . must [establish two elements:] (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson, 180 F.3d at 436 (internal quotation marks omitted)).

### (1) **Wagner's Work Environment**

"The first element of a hostile work environment has both an objective and subjective component: 'the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)) (internal quotation marks omitted).  To determine whether the environment is sufficiently hostile or abusive, a court must "'look[ ] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"

Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris, 510 U.S. at 23).

Generally, harassing incidents cannot simply be episodic - "they must be sufficiently continuous and concerted in order to be deemed pervasive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citations omitted).  "[S]imple teasing, offhand comments, and isolated incidents . . . will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788.  However, "even a single act can meet the threshold [of severity or pervasiveness] if, by itself, it can and does work a transformation of the plaintiff's workplace." Alfano, 294 F.3d at 374 (citing Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000); Richardson, 180 F.3d at 437).  Thus, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotations and citations omitted).

Wagner contends that after she was hired by the City, Burnham engaged in a course of conduct that made her work environment hostile by subjecting her to repeated and unwanted sexual harassment.  Specifically, she alleges that Burnham (1) addressed her as "sweetheart," "honey," or "hun" in private; (2) flirted with her frequently while they were working by standing close to her, placing his hand on her shoulder and "looking her up and down"; (3) on at least one occasion, asked her to unbutton a few of the buttons on her sweater; (4) on multiple occasions, referred to specific private parts of his anatomy; (5) advised her to get rid of her boyfriend; (6) twice attempted to get her to meet him outside of work; (7) told her that she should stop making things so difficult, and that "there would be no

obligations" between them; (8) asked her if she had any friends as attractive as she was; (9) insulted and propositioned her best friend for sex; and (10) indicated that if they [Wagner and Burnham] were to establish a relationship outside of work, there would be no strings attached.  Additionally, plaintiff claims that after Burnham harassed her friend, she called Scott on her cellular phone to complain about his conduct, telling Scott that "it was not the first time," and "if that's not sexual harassment, what is?"  (PSGIMF ¶ 220.)  She views this call as a complaint of sexual harassment, and Scott's treatment of her complaint - verbally counseling Burnham - as evidence that her complaint was not taken seriously.

With the exception of (1) and (9) above,[2] defendants deny plaintiff's allegations and attempt to characterize plaintiff as a flighty and emotional employee.  Burnham flatly denies any inappropriate conduct towards her, and defendants maintain that plaintiff never complained of sexual harassment.  Defendants argue that plaintiff was aware of the City's comprehensive sexual harassment policy, and she never filed a complaint about Burnham's conduct; they also dispute that plaintiff's phone call to Scott's cellular phone constituted a complaint of sexual harassment.

"The question of whether a work environment is sufficiently hostile to violate Title VII is one of fact . . . [and] [s]ummary judgment is appropriate only if it can 'be concluded as a matter of law that no rational juror could view [the defendant's conduct] as . . . an intolerable alteration of [the plaintiff's] working conditions.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 75

---

[2]  Burnham admits that he may have called plaintiff "hon" on occasion, but denies ever calling her "sweetheart" or "honey." (Docket No. 20, Ex. F, Burnham Dep. at 91.)  He also admits to making an "inappropriate comment" to Lisa Hockler, but attributes it to a "[l]apse in judgment." Id. at 132-33.

Although the comment was outside of work and not directed to plaintiff, it is evidence of Burnham's attitude, at that time, towards women and supports plaintiff's allegation of his conduct toward her.

(2d Cir. 2001) (quoting Howley, 217 F.3d at 154).  The disputed claims detailed above preclude summary judgment of whether Burnham's conduct created a hostile work environment, as parties' accounts of the interactions between plaintiff and Burnham widely diverge.  These conflicting accounts of plaintiff's interactions with Burnham present questions of fact which may not be resolved at this stage of litigation.  Although there may be reason to question the truth of Wagner's allegations and the truth of Burnham's denials, these questions are ones of credibility, a "determination that [the court is] not entitled to make." Giminiani v. City of Albany, No. 1:99 CV 2161, 2005 WL 2039197, at *4 (N.D.N.Y. Aug. 24, 2005) (quoting Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34, 55 (2d Cir. 2005)); see also R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58 (2d Cir. 1997) ("[E]ven where the surrounding circumstances indicate what has been termed, perhaps unfortunately, 'implausibility,' at the summary judgment stage the court should not 'weigh' the evidence in the same manner as the trier of fact."); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.  Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment." (internal citations omitted)).  Thus, viewing the above evidence in the light most favorable to Wagner, a reasonable factfinder may conclude that Burnham's conduct created a work environment that was objectionable.

### (2) Imputing Burnham's Conduct to the City

In addition to showing that a hostile work environment existed, Wagner must also show that a specific basis exists for imputing Burnham's conduct to the City.  "The starting

point for analyzing employer vicarious liability in a . . . hostile work environment action is to determine whether the person who allegedly created that environment is properly characterized as having been the plaintiff's 'supervisor.'" Mack, 326 F.3d at 123.  Where an employee is the victim of sexually harassing conduct "by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." Petrosino, 385 F.3d at 225 (citing Faragher, 524 U.S. at 789).  "[I]t is only when a 'supervisor with immediate (or successively higher) authority over the employee' has engaged in the complained of conduct, that the 'employer [may be] subject to vicarious liability.'" Mack, 326 F.3d at 123 (quoting Burlington Indus., 524 U.S. at 765; Faragher, 524 U.S. at 807).  If the "supervisor's behavior 'culminate[d] in a tangible employment action' against the employee," Petrosino, 385 F.3d at 225 (quoting Burlington Indus., 524 U.S. at 765), "the employer will, *ipso facto*, be vicariously liable," Mack, 326 F.3d at 124.

Without a tangible employment action, "an employer will still be liable for a hostile work environment created by a supervisor unless the employer successfully establishes an affirmative defense." Fairbrother v. Morrison, 412 F.3d 39, 49 (2d Cir. 2005) (citing Petrosino, 385 F.3d at 225).  To establish an affirmative defense, the employer must show that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., 524 U.S. at 765; see also Faragher, 524 U.S. at 807; Mack, 326 F.3d at 125.

Defendants first argue that they are entitled to summary judgment on plaintiff's hostile work environment claim because Burnham's alleged behavior cannot be attributed to the City because he was not plaintiff's supervisor.  Additionally, defendants maintain, as an affirmative defense, that Wagner never informed anyone at the City that she was allegedly being sexually harassed by Burnham, and that she failed to utilize the extensive sexual harassment policy that the City had in place.  Each of these arguments will be addressed in turn.

In <u>Mack v. Otis Elevator Co.</u>, the Second Circuit articulated a broad definition of "supervisor."  326 F.3d at 126.  There, the court held that the proper question in determining who was a supervisor is "whether the authority given by the employer to the [alleged supervisor] enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates."  <u>Id</u>.  The court adopted the Equal Employment Opportunity Commission ("EEOC") enforcement guidelines, which state that "[a]n individual qualifies as an employee's 'supervisor' if: (a) the individual has authority to undertake or recommend tangible employment decisions affecting the employee; *or* (b) [t]he individual has authority to direct the employee's daily work activities."  <u>Id</u>. at 127 (quoting EEOC Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors, 8 FEP Manual (BNA) 405:7654 (1999) (emphasis in original)).

Wagner claims that in addition to Scott, Burnham was also her supervisor, and the authority that the City gave him enabled him to create a hostile work environment for her.  She claims that Burnham had the "authority to undertake or recommend tangible employment decisions" affecting her - namely that he was instrumental in recommending that she be hired, transferred to the common area of the building, and be fired - and that he had

the "authority to direct [her] daily work activities" by assigning her various tasks and duties when she worked next to him as his assistant.  Also, she claims that he was, in fact, the person that fired her.  Thus, under <u>Mack</u>, Burnham qualifies as her supervisor.

Defendants argue that Valerie Scott, not Burnham, was plaintiff's direct supervisor, and thus, the City cannot be held vicariously liable for Burnham's alleged acts.  They claim that plaintiff's position as a Community Aid placed her under the direct supervision of Scott, and that in her interview, she was informed that Scott was to be her supervisor.  According to defendants, even though she received the majority of her job assignments from Burnham (during the time that she was working in the office next to him), even though it was  Burnham that first informed plaintiff that she had been hired, and even though her letter of termination was drafted and signed by Burnham, Scott was her direct supervisor.

While both sides concede that Scott was one of plaintiff's supervisors, issues of material fact remain as to whether Burnham was also her supervisor.  An employee may have more than one supervisor; just because Burnham was not her supervisor on paper does not mean he was not her supervisor in fact.  Reasonable finders of fact may determine that *both* Scott and Burnham were plaintiff's supervisors.  In her deposition, Wagner stated that she believed that she reported to both Scott and Burnham. (Docket No. 22, Ex. E, Wagner Dep. at 143.)  A jury could ultimately determine that her belief, coupled with the facts that (for part of her employment) Burnham assigned her daily tasks, informed her that she was hired, and later drafted and signed her termination letter and told her she was fired, also made him her supervisor.  As issues of material fact remain as to whether Burnham was also her supervisor, defendants' motion for summary judgment on this issue will be denied.

Defendants also allege as an affirmative defense that Wagner did not inform anyone at the City that she was being subjected to unwanted sexual advances from Burnham, and she failed to take advantage of the City's sexual harassment policy.  As stated above, to successfully demonstrate this affirmative defense, defendants must demonstrate that they (a) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., 524 U.S. at 765; see also Faragher, 524 U.S. at 807; Mack, 326 F.3d at 125.  This affirmative defense is only available if there has been no tangible employment action taken against the plaintiff employee.  See, e.g., Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001) (citing Farragher, 524 U.S. at 807; Burlington Indus., 524 U.S. at 765).

As the firing of Wagner constitutes a prima facie tangible employment action, defendants are not entitled to claim this affirmative defense.  Defendants allege that they were well within their rights in firing Wagner, a probationary employee, for reasons totally unrelated to the alleged sexual harassment, namely sub-par work product, giving incorrect legal advice to a landlord, and inappropriate telephone calls and emotional displays in the workplace.  If Wagner's time of employment with the City were completely devoid of sexual harassment, defendants would most likely be entitled to terminate her employment based on its policy for probationary employees.  However, when the evidence is read in light of the plaintiff, the non-moving party, a jury could find that she was fired because she rebuffed Burnham's sexual advances.  Title VII prohibits defendants from taking such action, regardless of whether she was a probationary employee or employed with defendants for 20

years. Therefore, summary judgment here is improper, as a jury must determine whether

Wagner's employment was terminated because of her failure to submit to Burnham.  If a jury

so decides, defendants would be precluded from asserting this affirmative defense.

Multiple disputed issues of fact preclude summary disposition as to plaintiff's hostile

work environment claim.  Resolution of this claim hinges on a jury's determination as to

whether her work environment was hostile, whether Burnham was her supervisor, and

whether plaintiff was discharged as a result of her refusal to submit to Burnham's alleged

sexual advances.  Thus, defendants' motion for summary judgment as to plaintiff's hostile

work environment claims will be denied.

### c. Retaliation

Additionally, plaintiff contends that Burnham retaliated against her directly after she

rebuffed his sexual advances, when he allegedly (1) requested that Scott reassign her to

work in the common area of the Public Safety Building, and (2) terminated her employment

with the City.

Both Title VII and the NYSHRL prohibit employers from retaliating against

employees who complain about sexual discrimination.  Claims of retaliation under NYSHRL

and Title VII are essentially identical, as the New York courts require the same standard of

proof for claims brought under the NYSHRL as those brought under Title VII.  See Tomka v.

Seiler, 66 F.3d 1295, 1304 n. 4 (2d Cir. 1995) (citing Miller Brewing Co. v. State Div. of

Human Rights, 66 N.Y.2d 937 (N.Y. 1985)).  "Title VII is violated when a retaliatory motive

plays a part in adverse employment actions toward an employee, whether or not it was the

sole cause."  Terry, 336 F.3d at 140-41 (internal quotation marks and citations omitted).

To establish a prima facie case of retaliation, "a plaintiff must demonstrate that '(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity.'" Mack, 326 F.3d at 129 (quoting Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000)). At this level, the plaintiff's burden is de minimis. See Tomka, 66 F.3d at 1308.

Should the plaintiff establish a prima facie case, a presumption of retaliation appears, and the employer must "articulate some legitimate, nondiscriminatory reason for the employer's rejection." McDonnell Douglas, 411 U.S. at 802. If the employer can offer proof of a nondiscriminatory reason, the burden shifts to the plaintiff to "prove that the proffered reason was merely a pretext for retaliation that the employer's action was prompted by an impermissible motive." Tomka, 66 F.3d at 1308.

Defendants argue that Wagner cannot establish a prima facie case of retaliation because they were not aware of the alleged sexual harassment. Because plaintiff was aware that defendants had an established sexual harassment policy in place, and she did not make use of that policy by reporting Burnham's alleged conduct to the designated persons, defendants assert that she did not engage in a protected activity. According to defendants, without knowledge of the harassment, the transfer and subsequent firing of plaintiff could not be in retaliation for either rebuffing Burnham's alleged advances or reporting the harassment to a supervisor. Thus, they claim they are entitled to summary judgment on her retaliation claim because plaintiff has not demonstrated a prima facie case.

Wagner contends that the defendants were in fact aware of Burnham's conduct - she maintains that her telephone call to Scott complaining about Burnham's conduct towards

Hockler, during which she claims to have stated, "[i]f this isn't sexual harassment, then what is. And this isn't the first time," constituted a complaint of sexual harassment, which is a protected activity. (Docket No. 22, Ex. E, Wagner Dep. at 197.)  As Scott admits to speaking with Burnham after receiving the telephone call, and Wagner was terminated shortly thereafter, she argues that she has established a prima facie case of retaliation.

Wagner's retaliation claim hinges on whether she engaged in a protected activity. Title VII forbids employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).  "The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management," Gregory v. Daly, 243 F.3d 687, 700-01 (2d Cir. 2001) (quoting Matima v. Celli, 228 F.3d 68, 78 (2d Cir. 2000)), "so long as the employee has a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law,'" Id. at 701 (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)).

Whether Wagner's telephone call constituted a complaint - formal or informal - is a question of fact for the jury.  This telephone call occurred on a Friday night, after Hockler told Wagner what Burnham had said to her.  Plaintiff was not present at the bar that night, nor did she witness the exchange between Hockler and Burnham.  A jury could determine that the purpose of the telephone call to Scott was to complain about Burnham's conduct toward her friend, not to complain about Burnham's previous conduct toward her.  However, a jury could also determine that plaintiff's mention of sexual harassment and her indication that such

conduct had previously occurred constituted a complaint of sexual harassment by Burnham; if so, such a complaint - however informal - would be protected activity.

If a jury determines that Wagner's complaint amounted to a protected activity, she has established a prima facie case of retaliation.  Scott admits to receiving the telephone call, and both she and Burnham agree that she spoke with Burnham regarding his exchange with Hockler, which demonstrates that the defendants were aware of the protected activity in satisfaction of the second prong of the test.  The third prong - adverse employment action - is undisputed, as Wagner's position with the City was terminated.  Plaintiff can also establish the causal connection required by the fourth prong, as "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001).  She was fired approximately one week after making the complaint.

An issue not directly raised by either side is whether declining or rebuffing a harasser's sexual advances constitutes a "protected activity" under Title VII retaliation jurisprudence.

The Second Circuit has specifically declined to rule on whether resisting an employer's sexual advances constitutes "protected activity" for purposes of a retaliation claim. See Fitzgerald v. Henderson, 251 F.3d 345, 366 (2d Cir. 2001) ("We need not rule on the district court's view that 'rejection of sexual advances is not a protected activity under Title VII.'").  Indeed, none of the circuit courts have ruled on this issue. See, e.g. Little v.

NBC, 210 F. Supp. 2d 330, 385 (S.D.N.Y. 2002).[3]  However, the district courts around the country are split on the issue.

Many district courts in New York and other states have found that an employee's refusal to submit to sexual advances constitutes "protected activity."  See Laurin v. Pokoik, No. 02-CV-1938 (LMM), 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005); Roberts v. County of Cook, No. 01-C-9373, 2004 WL 1088230, at *4 (N.D. Ill. May 12, 2004); Little, 210 F. Supp. 2d. at 386; Lange v. Town of Monroe, 213 F. Supp. 2d 411, 420 (S.D.N.Y. 2002); Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1049 (D. Haw. 2000); Fleming v. South Carolina Dep't of Corr., 952 F. Supp. 283, 288 (D.S.C. 1996); EEOC v. Domino's Pizza, 909 F. Supp. 1529, 1536 (M.D. Fla. 1995).  These courts base their finding that refusal is a protected activity based on the reasoning that opposing sexually harassing behavior constitutes "oppos[ing] any practice made an unlawful employment practice" made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  Because sexual harassment is an unlawful employment practice, and an employee's refusal is a means of opposing such behavior, that refusal should constitute a "protected activity."

There are a substantial number of district courts, however, that have found that the refusal of sexual advances is not a protected activity within Title VII.  See Del Castillo v. Pathmark Stores, Inc., 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996); Fitzgerald v. Henderson, 36 F. Supp. 2d 490, 499 (N.D.N.Y. 1998), *aff'd in part, rev'd in part on other grounds*, 251

---

[3]See Murray v. Chicago Transit Auth., 252 F.3d 880, 890 (7th Cir. 2001) ("We need not decide whether a plaintiff who rejects a sexual invitation from a supervisor has met the first element of a claim for retaliation because, as discussed above, [plaintiff] failed to demonstrate that she suffered an adverse employment action ..."); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.4 (3d Cir. 2000) ("The District Court held that the rejection of a sexual advance was a protected activity, and that determination has not been questioned on appeal.  Therefore, we do not need to address it.").

F.3d 345 (2d Cir. 2001); <u>Rashid v. Beth Israel Med. Ctr.</u>, No. 96 Civ. 1833, 1998 WL 689931, at *6 (S.D.N.Y. Oct. 2, 1998); <u>Bampoe v. Coach Stores, Inc.</u>, 93 F. Supp. 2d 360, 372 (S.D.N.Y. 1999); <u>Farfaras v. Citizens Bank & Trust of Chicago</u>, No. 01-C-8720, 2004 WL 2034077, at *2 (N.D. Ill. Aug. 30, 2004); <u>Jones v. County of Cook</u>, 2002 U.S. Dist. LEXIS 13075 (N.D. Ill. July 17, 2002); <u>Rachel-Smith v. FTData, Inc.</u>, 247 F. Supp. 2d 734, 748-49 (D. Md. 2003). These courts do not believe that a mere rebuff, or refusal, rises to the level of a Title VII retaliation claim.  "[E]ven the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances, which is all that is alleged here by way of 'protected activity.'  If it were otherwise, *every harassment claim would automatically state a retaliation claim as well.*"  <u>Del Castillo</u>, 941 F. Supp. at 438-39 (emphasis added).

As the Second Circuit has declined to rule on this issue, and the district courts are split, this issue need not be reached in the present decision, as a prima facie case of retaliation can be reached on different grounds.  However, the question of whether or not plaintiff's refusal of Burnham's alleged sexual advances constitutes a "protected activity" will probably have to be resolved at trial.

As discussed in section **III(B)(1)(a)** *supra*, defendants have asserted that they had legitimate reasons for taking adverse employment action against Wagner; however, questions of fact remain as to whether those reasons are pretext for discrimination.  Because material questions of fact remain as to whether plaintiff has established a prima facie case, and whether defendants had legitimate reasons for taking adverse employment action against her, defendants' motion for summary judgment as to plaintiff's retaliation claim will be denied.

- 31 -

### C. Qualified Immunity

Burnham also moves to dismiss the complaint against him on the grounds that he is a public official entitled to qualified immunity.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982).  A two-prong test is used to determine whether a public official is entitled to qualified immunity. First, it must be determined whether the facts, taken in the light most favorable to the plaintiff, establish that the defendant's conduct violated the plaintiff's constitutional rights. Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  If the plaintiff's constitutional rights were violated, it must be determined whether such constitutional rights were "clearly established," such that "[t]he contours of the right [are] sufficiently clear [so] that a reasonable official would understand that what he is doing violated that right." Id. at 201-06 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also X-Men Security, Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) (holding that officials are entitled to qualified immunity if their actions were objectively reasonable in light of clearly established law).

Here, due to the significant factual disparities, and because the facts must be viewed in the light most favorable to the nonmoving plaintiff, Burnham is not entitled to qualified immunity as a matter of law.  Reasonable factfinders could determine that he sexually harassed Wagner, and that she was subjected to adverse employment action as a result of her refusal to submit to his advances and her complaint to Scott of his actions.  It is clearly established under the laws of both the United States and New York state that it is

unlawful to subject employees to sexual harassment or discrimination.[4]  Burnham's motion to dismiss plaintiff's complaint on the grounds of qualified immunity will be denied.

## IV.  CONCLUSION

Wagner has set forth sufficient evidence to show that there are genuine issues of material fact such that reasonable jurors could find that defendants violated both Title VII and the NYSHRL by subjecting her to unlawful sexual discrimination and retaliation.  Because plaintiff has a clearly established right to be free from such treatment by her employers under both the United States and New York state constitutions, Burnham has not established that he is entitled to qualified immunity.

Therefore, it is

ORDERED that

1.  Defendants' motions for summary judgment as to plaintiff's quid pro quo sexual harassment claims under 42 U.S.C. § 1983 and NYSHRL is DENIED;

2.  Defendants' motion for summary judgment as to plaintiff's "hostile work environment" sexual harassment claims under 42 U.S.C. § 1983 and NYSHRL is DENIED;

3.  Defendants' motion for summary judgment as to plaintiff's retaliation claims under 42 U.S.C. § 1983 and NYSHRL is DENIED; and

4.  Defendant Burnham's motion to dismiss the complaint on qualified immunity is DENIED.

IT IS SO ORDERED.

Dated:   February 1, 2006
         Utica, New York.

United States District Judge

---

[4]  See generally 42 U.S.C. § 2000e-2(a), et seq. and NY Exec. Law § 296.